United States District Court
Southern District of Texas

**ENTERED**

January 08, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS COMMUNITY BANK, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-296 |
| | § | |
| SILVER SCAPE HOMES, LLC, d/b/a | § | |
| SILVERKEY HOMES, NICOLE A. FELT | § | |
| ELAM, and COLESON CAPITAL | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Receiver Federal Deposit Insurance Corporation's (the "FDIC") Motion for Partial Summary Judgment (Doc. 23). The court has considered the motion, Defendants' response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motion be **GRANTED**.

## I. Case Background

Plaintiff Texas Community Bank (the "Bank") filed suit in state court against Defendants to obtain a deficiency judgment after a non-judicial foreclosure of a promissory note that had been executed in December 2007 by Defendant Silver Scape Homes, LLC, doing business as Silverkey Homes ("Silverkey").[2] The note

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 25.

[2] See Doc. 1, Notice of Removal p. 1; Doc. 2-3, Ex. C-1 to Notice of Removal by FDIC, Original St.-Ct. Pet. p. 2.

provided for a non-revolving line of credit from which Silverkey could make requests for advancements to be used for the purchase of 2332 Wroxton Road in Houston, the demolition of the existing house, and the construction of a 4,140-square-foot residence at that address.[3] The limit on the line of credit was $943,810.[4] Defendant Nicole Felt Elam ("Elam") served as guarantor on the loan.[5]

Pursuant to the loan agreement, Silverkey requested advancements under the note and the Bank made the requested advancements "provided same ha[d] been approved by [the Bank] in its sole discretion."[6] The loan agreement contained a merger clause stating that the loan agreement and related documents embodied the "FINAL AND ENTIRE AGREEMENT" between the parties.[7] The note was made payable on demand or, if no sooner demand was made, on or before December 31, 2008, one year after the date of

---

[3]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet. p. 2; Doc. 3-1, Ex. A to Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., David Felt's Aff. p. 2; Doc. 23-1, Ex. A to the FDIC's Mot. for Partial Summ. J., Loan Agreement p. 1.

[4]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet. p. 2; Doc. 3-1, Ex. A to Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., David Felt's Aff. p. 2; Doc. 23-1, Ex. A to the FDIC's Mot. for Partial Summ. J., Loan Agreement p. 1; Doc. 23-2, Ex. B to the FDIC's Mot. for Partial Summ. J., Promissory Note p. 1; Doc. 23-3, Ex. C to the FDIC's Mot. for Partial Summ. J., Deed of Trust, Sec. Agreement & Fin. Statement p. 1.

[5]    See Doc. 3-2, Ex. A to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Loan Req.

[6]    Doc. 23-1, Ex. A to the FDIC's Mot. for Partial Summ. J., Loan Agreement p. 1.

[7]    Id. p. 7.

execution.[8]  The note also contained a merger clause.[9]

A deed of trust provided for foreclosure in the event of default on the note.[10]  As did the note and the loan agreement, the deed of trust contained a merger clause.[11]  It also contained a provision waiving rights under Texas Property Code §§ 51.003-51.005 to allow the Bank to seek a deficiency judgment based on the sale price of the collateral property rather than its fair market value.[12]  The contract provision disallowed any offset for the difference between the two, stating that the waiver created "an irrebuttable presumption that the foreclosure sale price [was] equal to the fair market value of the Property for purposes of calculating deficiencies owed" by Silverkey and/or other obligated parties.[13]

The Bank made an initial advance of $457,000.[14]  The ultimate maturity date on the note was extended twice by agreement.[15]  On

---

[8]    Doc. 23-2, Ex. B to the FDIC's Mot. for Partial Summ. J., Promissory Note p. 1.

[9]    See id. p. 7.

[10]   See Doc. 23-3, Ex. C to the FDIC's Mot. for Partial Summ. J., Deed of Trust, Sec. Agreement & Fin. Statement p. 3.

[11]   See id. p. 10.

[12]   See id. p. 9.

[13]   Id.

[14]   See Doc. 3-1, Ex. A to Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., David Felt's Aff. p. 3.

[15]   See Doc. 23-4, Ex. D to the FDIC's Mot. for Partial Summ. J., Guar. Agreement Dated Jan. 14, 2009; Doc. 23-5, Ex. E to the FDIC's Mot. for Partial Summ. J., Renewal, Extension, & Modification Agreement Dated July 5, 2010.

January 14, 2009, the date of the first extension, the amount due was $527,572.11.[16]  In connection with the extension, both Defendant Elam and Defendant Coleson Capital Corporation ("CCC") signed a separate agreement guarantying payment.[17]  The guaranty agreement contained a clause regarding merger, a waiver of the statutory deficiency protections, and a provision releasing the Bank from:

> ANY AND ALL CLAIMS, CAUSES OF ACTION, AGREEMENTS, DEFENSES, OFFSETS AGAINST THE OBLIGATIONS, OR CLAIMS FOR RELEASE OF ANY NATURE WHATSOEVER, WHICH ARE ACCRUED IN WHOLE OR IN PART ON OR BEFORE THE DATE OF EXECUTION HEREOF, WHETHER KNOWN OR UNKNOWN, IN CONTRACT OR IN TORT . . . ARISING OUT OF OR RELATED TO ANY DOCUMENTS, INSTRUMENTS OR AGREEMENTS EXECUTED IN CONNECTION WITH THE GUARANTEED INDEBTEDNESS, OR THIS GUARANTY AGREEMENT, OR THE TERMS OR NEGOTIATION OF ANY OF THE FOREGOING.[18]

At the time of the second extension agreement, which was dated July 5, 2010, the balance owed on the loan was $527,572.11, the same amount as in January 2009.[19]  In lieu of payment on demand, a payment schedule required ten monthly installments beginning on July 5, 2010, and ending on or before April 5, 2011, when the

---

[16]　　See Doc. 23-4, Ex. D to the FDIC's Mot. for Partial Summ. J., Guar. Agreement Dated Jan. 14, 2009 p. 1; Doc. 23-5, Ex. E to the FDIC's Mot. for Partial Summ. J., Renewal, Extension, & Modification Agreement Dated July 5, 2010 p. 1.

[17]　　See Doc. 23-4, Ex. D to the FDIC's Mot. for Partial Summ. J., Guar. Agreement Dated Jan. 14, 2009.

[18]　　Id. pp. 12, 13.

[19]　　See Doc. 23-4, Ex. D to the FDIC's Mot. for Partial Summ. J., Guar. Agreement Dated Jan. 14, 2009 p. 1; Doc. 23-5, Ex. E to the FDIC's Mot. for Partial Summ. J., Renewal, Extension, & Modification Agreement Dated July 5, 2010 pp. 1, 2.

4

entire remaining balance was due.[20]  The second extension agreement
stated that "[t]he multiple advance feature of the Note as
described in the Loan Documents ha[d] previously been deleted in
its entirety."[21]  Defendant Silverkey "promise[d] to duly keep,
observe and perform all of [its] agreements, covenants or
obligations . . . under the Note and under this or any other
instrument securing, guaranteeing or otherwise relating to any
indebtedness now or hereafter evidenced by the Note or any part of
it."[22]

This agreement also included a merger clause, as well as a
clause disavowing offsets, claims, or defenses to the note.[23]  A
more detailed release and waiver, covering claims in any way
connected to the acts or omissions of the Bank, included:

> ANY BREACH OF FIDUCIARY DUTY, BREACH OF ANY DUTY OF FAIR
> DEALING, BREACH OF CONFIDENCE, BREACH OF FUNDING
> COMMITMENT, UNDUE INFLUENCE, DURESS, ECONOMIC COERCION,
> CONFLICT OF INTEREST, NEGLIGENCE, BAD FAITH, MALPRACTICE,
> VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
> ORGANIZATIONS ACT, INTENTIONAL OR NEGLIGENT INFLICTION OF
> MENTAL DISTRESS, TORTIOUS INTERFERENCE WITH CONTRACTUAL
> RELATIONS, TORTIOUS INTERFERENCE WITH CORPORATE
> GOVERNANCE OR PROSPECTIVE BUSINESS ADVANTAGE, BREACH OF
> CONTRACT, DECEPTIVE TRADE PRACTICES, LIBEL, SLANDER OR
> CONSPIRACY . . . .[24]

---

[20]     Doc. 23-5, Ex. E to the FDIC's Mot. for Partial Summ. J., Renewal,
Extension, & Modification Agreement Dated July 5, 2010 p. 2.

[21]     Id.

[22]     Id.

[23]     See id. pp. 4, 6.

[24]     Id. p. 4.

Defendants Elam and CCC were identified as guarantors and signed the extension in agreement with the provisions.[25]

In October 2011, the Bank sent Defendants a written demand and foreclosure notice.[26] Upon Defendants' failure to cure the default, the Bank proceeded, through a substitute trustee, with the foreclosure sale of the property.[27] On November 1, 2011, the Bank entered the highest bid at public auction and purchased the property for $300,000, leaving a deficiency balance on the note of $258,145.29.[28]

In February 2013, the bank brought a state-court action to obtain a deficiency judgment.[29] Defendants answered the petition and, in their first amended pleading, asserted both affirmative defenses and counterclaims against the Bank.[30] As affirmative defenses, Defendants raised: (1) offset for the fair market value

---

[25]    See id. pp. 1, 2, 4-5, 6-7.

[26]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet. p. 4; Doc. 3-23, Ex. P to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Letter from Parker & Vaughan, P.C. to Def. Silverkey Dated Oct. 7, 2011.

[27]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet. p. 4; Doc. 3-23, Ex. P to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Notice of Tr.'s Sale; Doc. 3-25, Ex. Q to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Substitute Tr.'s Deed.

[28]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet. p. 5; Doc. 3-25, Ex. Q to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Substitute Tr.'s Deed.

[29]    See Doc. 2-3, Ex. C-1 to Notice of Removal, Original St.-Ct. Pet.

[30]    See Doc. 2-6, Ex. C-3 to Notice of Removal, St.-Ct. Defs.' Original Answer; Doc. 2-14, Ex. C-10 to Notice of Removal, St.-Ct. Defs.' 1st Am. Original Answer & Countercl.

on the date of foreclosure pursuant to Texas Property Code §
51.003; (2) fraud by nondisclosure; (3) estoppel; (4) economic
duress; (5) material breach of contract; (6) failure of
consideration; (7) accord and satisfaction; and (8) payment.[31]
Defendants provided no factual or legal context for these defenses
in their answer.[32]

    As counterclaims, Defendants alleged fraud and breach of
contract.[33] The gist of the fraud claim was that the Bank was aware
of its financial troubles at the time it entered into the
acquisition and construction loan with Defendants and did not
reveal that information to Defendants.[34] Along the same lines,
Defendants alleged that the Bank misrepresented its ability to fund
the loan, inducing them into procure the loan.[35] The Bank then
allegedly misrepresented its intent to fund the loan in the future,
which induced Defendants to sign additional documents.[36] Defendants
alleged that, in addition to misrepresentations, the Bank
threatened to seize assets if the loan renewal documents were not

---

[31]    See Doc. 2-14, Ex. C-10 to Notice of Removal, St.-Ct. Defs.' 1st Am.
Original Answer & Countercl. p. 1.

[32]    See id.

[33]    See id. pp. 8-10.

[34]    See id. pp. 8-9.

[35]    See id. p. 4.

[36]    See id. p. 5.

signed.[37]  Defendants claimed that the Bank further misled them by indicating that it did not intend to foreclose on the real-property collateral.[38]

Defendants alleged that the Bank breached the loan terms by wholly failing to fund the note and by prematurely demanding payment.[39]  According to Defendants, Defendant Silverkey "never defaulted on the agreement; [the Bank] defaulted and then used coercion and deception to force Silverkey to sign documents and give the bank money."[40]

On June 21, 2013, the state court granted the Bank's motion for summary judgment liquidating the deficiency judgment plus interest but reserving Defendants' state law defenses.[41]  The court subsequently denied the Bank's motion for summary judgment on Defendants' counterclaims.[42]

On July 29, 2013, David Felt, vice president of both Defendants Silverkey and CCC as well as president of Gibraltar Finance & Mortgage, directed a letter to the Bank and several

---

[37]    See id.

[38]    See id. p. 6.

[39]    See id. p. 10.

[40]    See id. p. 6.

[41]    See Doc. 1, Notice of Removal p. 1; Doc. 4-2, Ex. C-14 to Notice of Removal, St.-Ct. Order Dated June 21, 2013.

[42]    See Doc. 1, Notice of Removal p. 1; Doc. 4-7, Ex. C-18 to Notice of Removal, St.-Ct. Order Dated Oct. 4, 2013.

individuals at the bank.[43]  The letter asserted that "claims and offsets against the Bank . . . would reduce any liability . . . to the Bank" and "additional damages, resulting from the Bank[']s actions."[44]  David Felt acknowledged that, "[w]hen the Bank is closed, the right to claim an offset or damages against the Bank may be estopped by Federal Law."[45]  He "request[ed] and demand[ed]" that the claims and offsets be placed in the books and records of the Bank and that the Bank notify the FDIC of the claims and offsets so that they may be preserved.[46]  The letter threatened personal liability of the individuals if they failed to preserve the claims and offsets.[47]  Two days later, counsel for the Bank emailed counsel for Defendants asking that Defendants be instructed "to cease and desist from contacting the Bank regarding pending litigation."[48]

In another letter dated August 16, 2013, David Felt complained

---

[43]    See Doc. 24-1, Ex. A to David Felt's Aff. in Support of Defs.' Resp. to the FDIC's Mot. for Summ. J., Letter from David Felt to the Bank, et al., Dated July 29, 2013.

[44]    Id.

[45]    Id.

[46]    Id.

[47]    See id.

[48]    Doc. 24-1, Ex. C to Defs.' Resp. to the FDIC's Mot. for Summ. J., Email from Craig H. Clendenin to Richard Battaglia Dated July 31, 2013.

that Defendant CCC had attempted to pay off its debt[49] but the Bank refused to quote a payoff amount.[50]   He argued that the debt was thus cancelled "by operation of law[,] . . . and no interest, fees or further charges could accrue."[51]   The letter further alleged that the Bank made false representations to a bankruptcy court and wrongfully attempted to foreclose on the loan.[52]   David Felt made demands on behalf of Defendant CCC regarding the release of the security agreement and the recordation of the letter.[53]

On December 13, 2013, the Office of the Comptroller of the Currency closed the Bank and appointed the FDIC as receiver.[54]   The FDIC accepted the appointment and, citing 12 U.S.C. § 1821, claimed that it "succeeded to all rights, titles, powers, and privileges of the Bank and took charge of the assets and affairs thereof."[55]   The FDIC set out to resolve outstanding claims against the Bank.[56] After filing a notice of its automatic substitution as the real

---

[49]   It is unclear to the court whether this letter referred to the debt at issue in this action or a loan directly to Defendant CCC.   See Doc. 24-1, Ex. B to David Felt's Aff. in Support of Defs.' Resp. to the FDIC's Mot. for Summ. J., Letter from David Felt to the Bank, et al., Dated Aug. 16, 2013.

[50]   See id.

[51]   Id.

[52]   See id.

[53]   See id.

[54]   See Doc. 1, Notice of Removal p. 2.

[55]   Id.

[56]   See id.

10

party in interest, the FDIC removed the action under federal question jurisdiction in February 2014.[57]

A few days after removal,[58] the FDIC filed an unopposed motion to stay this case while Defendants exhausted the mandatory administrative claim review procedure on their counterclaims.[59] The stay remained in place for nearly a year while Defendants pursued their counterclaims administratively.[60]  On December 5, 2014, the FDIC sent a Notice of Disallowance of claim to each Defendant.[61]

In January 2015, the court lifted the stay upon motion of the parties.[62]  The FDIC filed a motion for partial summary judgment.[63] Additionally, the parties sought a court referral to mediation, which the court granted.[64]  At the mediation on May 18, 2015, the

---

[57]   See id. (stating that 12 U.S.C. § 1819(b)(2) deems all civil cases involving the FDIC as a party as arising under the laws of the United States and gives the FDIC ninety days after substituting to remove the state proceeding).

[58]   The court notes that a companion case is also pending in this district.  See Gibraltar Fin. & Mortg., Inc. v. Tex. Cmty. Bank, N.A., Civ. Action No. H-14-257.  Gibraltar Finance and Mortgage filed that case against the Bank and its former officer in state court, asserting negligence, negligent misrepresentation, and wrongful foreclosure related to a foreclosure on real property that secured a loan to Defendant CCC.  See id., Doc. 23, Mem. Opinion & Order p. 1.  The FDIC removed that case and this case on the same day.  See id., Doc. 1, Notice of Removal.

[59]   See Doc. 5, Unopposed Mot. to Stay Proceedings p. 3.

[60]   See Doc. 7, Order Dated Feb. 10, 2014.

[61]   See Doc. 14, Unopposed Mot. for Order to Remove Stay on Proceedings Reinstating the Case to the Active Docket p. 2.

[62]   See id.; Doc. 15, Order Dated Jan. 30, 2015.

[63]   See Doc. 23, the FDIC's Mot. for Partial Summ. J.; Doc. 24, Defs.' Response to the FDIC's Mot. for Partial Summ. J.

[64]   See Doc. 17, Unopposed Mot. to Refer Case to Mediation; Doc. 18, Order Dated Feb. 6, 2015.

parties and their counsel discussed different issues in both this case and the companion case also pending in this district.[65]  They reached the conclusion that any additional mediation of this case would not be fruitful.[66]

In September 2015, Defendants filed a motion for leave to amend its counterclaim to join TCB Holding Company and ten individuals who were officers or directors of either the Bank or the holding company.[67]  After entertaining arguments on the motion, the court denied leave to amend.[68]

On November 20, 2015, counsel for the FDIC notified the court that Defendants rejected the FDIC's offer to globally settled the two related cases.[69]  The FDIC requested that the court consider the pending motion for partial summary judgment on Defendants' state-law affirmative defenses and counterclaims.[70]  The court addresses that motion now.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that

---

[65]  See Doc. 26, the FDIC's Mediation Report p. 1; Gibraltar Fin. & Mortg., Inc. v. Tex. Cmty. Bank, N.A., Civ. Action No. H-14-257.

[66]  See Doc. 26, the FDIC's Mediation Report p. 1.

[67]  See Doc. 31, Defs.' Mot. for Leave to File Am. Pleading & Joinder of Parties; Doc. 31-2, Ex. 1 to Defs.' Mot. for Leave to File Am. Pleading & Joinder of Parties, Defs.' Proposed 2$^{\text{d}}$ Am. Original Answer & 1st Am. Countercl.

[68]  See Doc. 42, Order Dated Nov. 4, 2015.

[69]  See Doc. 43, Letter from Charles W. Getman to the Court Dated Nov. 20, 2015.

[70]  See id.

no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  The movant must inform the court of the basis for the
summary judgment motion and must point to relevant excerpts from
pleadings, depositions, answers to interrogatories, admissions, or
affidavits that demonstrate the absence of genuine factual issues.
Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323; Topalian v.
Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the party opposing
summary judgment responds with evidence in support of each
challenged element, the case must be resolved at trial.  Celotex
Corp., 477 U.S. at 324.

### III. Analysis

The FDIC seeks summary judgment on all of Defendants'
affirmative defenses and counterclaims.

### A.  The Parties' Arguments

The FDIC presents the following arguments in support of
summary judgment: (1) Defendants released and waived many of the
affirmative defenses and counterclaims when they entered the second
extension agreement; (2) in addition to the contractual waiver, the
express language of the loan agreement, the note, and the second
extension agreement preclude Defendants' contract claim; (3) to
support their contract claim, Defendants rely on statements beyond

13

the four corners of the note; (4) Section 1823 prevents a claim against the FDIC for fraudulent inducement even when the misrepresentation is by nondisclosure; and (5) even if the court entertained Defendants' fraud claim, they cannot satisfy the requirement that the Bank had a duty to disclose the omitted information to Defendants.

Defendants' response is hardly one at all, as it leaves the FDIC's arguments untouched.   Rather, Defendants focus solely on their contention that the underlying note was paid, confusingly arguing that the loan balance was reduced to the point that the foreclosure sale of the collateral fully extinguished the debt while also citing case law about prevention of performance and arguing that "Defendants were ready willing and able to retire debt [sic]."[71]

## B.   **Discussion**

Collectively, Defendants' defenses and counterclaims have a scattershot quality.   The court therefore takes the time to organize them according to legal similarity.

Defendants raise breach of contract as both a defense and a counterclaim and raise failure of consideration as a defense.   The court addresses these allegations together with the defenses of accord and satisfaction and payment.   Allegations of fraud appear in several forms both as a defense and as a counterclaim.

---

[71]   Doc. 24, Defs.' Resp. to the FDIC's Mot. for Partial Summ. J. p.

Defendants assert offset for fair market value under the statutory deficiency protections, economic duress, and estoppel as defenses.

### 1. Contract Defenses and Counterclaim

Defendants listed material breach of contract, failure of consideration, accord and satisfaction, and payment as defenses. Although Defendants provided no explanation for these defenses, they asserted in their counterclaim that the Bank breached by failing to fund the note, which they refer to as a failure of consideration. Defendants specifically alleged that the Bank refused to fund construction when requested and that the federal government took control of the Bank before the construction money was provided. The other breach of contract alleged in the complaint was the Bank's premature demand of payment.

Beginning with the former allegation, the court finds that the Bank did not breach the terms of the loan package by failing to fund the loan. The parties agree that the Bank made an initial advance of $457,000. Both of the extension agreements listed the debt at $527,572.11. Although the renewal amount likely included interest and fees, it indicates that a loan distribution was made, and the inclusion of the dollar amount of the debt in both extension agreements indicates that the parties agreed that the loan was at least partially funded. David Felt testified that, at some point, Bank specifically refused to fund Defendant Silverkey's request for construction money. Although that may be, the loan

15

agreement gave the Bank the right, in its sole discretion, to decide whether to fund Defendant Silverkey's requests.

Defendants' other allegation of breach, that the Bank prematurely demanded payment of the note, is contradicted by the note itself, which was payable on the Bank's demand. The maturity date of December 31, 2008, was the effective demand date only if the entire debt had not yet been paid.[72]

As an additional reason that they may not pursue these breach of contract theories, Defendants released the Bank from all breach-of-funding-commitment claims and breach-of-contract claims in July 2010 when they entered the second extension agreement.

Moving on to the defense of accord and satisfaction, the court finds no summary judgment evidence that the parties reached an agreement that the debt would be satisfied by some other method than payment or that the debt was satisfied by that substitute performance.

With regard to payment, Defendants present no evidence of payment. The only evidence specifically cited by Defendants was

---

[72] David Felt testified that the Bank demanded that Defendant CCC pay $38,000 toward Defendant Silverkey's loan balance in exchange for the Bank's execution of a release of lien necessary for Defendant CCC's sale of one of its properties. According to David Felt, this occurred after the execution of the second extension agreement, which set up a payment schedule in lieu of the on-demand-payment provision. This appears to be an oral agreement negotiated and entered after the execution of the second extension agreement. The merger clause in the second extension agreement explicitly excludes such agreements from the loan terms.

16

David Felt's letters.[73]  In the July 2013 letter to the Bank, David Felt asserted that claims, damages, and offsets against the Bank reduced the debt.[74]  Not only do his assertions in the letter lack any factual detail, they are not competent summary-judgment evidence of payment.  His second letter is also not competent summary-judgment evidence of payment and, regardless, is of questionable relevance to the loan at issue in this case.

In the counterclaim and the response to summary judgment, which were based on David Felt's July 2013 affidavit, Defendants contend that Defendant Silverkey reduced the loan balance to the point that the sale price on foreclosure extinguished any remaining debt.[75]  Defendants argue that they paid $158,000.42 on the original advance of 457,000, leaving a balance of $298,999.58 at the time of foreclosure, an amount less than the foreclosure-sale proceeds.[76]  In his affidavit, David Felt pointed to the payment records for

---

[73]    Defendants generally directed the court to David Felt's affidavit of July 30, 2013, which was submitted in response to the Bank's state court motion for summary judgment.  See Doc. 3-1, Ex. A to Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., David Felt's Aff.  Defendants' response to the motion now pending does not point to any statement in David Felt's July 2013 affidavit or to any page of the over 200 pages of attached exhibits.  The court has no obligation to consider materials that are not cited, much less to search them for relevant evidence.  See Fed. R. Civ. P. 56(c)(3).  In this case, the court did look through the exhibits to David Felt's affidavit.

[74]    See Doc. 24-1, Ex. A to David Felt's Aff. in Support of Defs.' Resp. to the FDIC's Mot. for Summ. J., Letter from David Felt to the Bank, et al., Dated July 29, 2013.

[75]    See Doc. 2-14, Ex. C-10 to Notice of Removal, Defs.' 1st Am. Original Answer & Countercl. p. 5; Doc. 24, Defs.' Resp. to the FDIC's Mot. for Summ. J. p. 3.

[76]    See Doc. 2-15, Ex. C-10 to Notice of Removal, Defs.' 1st Am. Original Answer & Countercl. p. 5.

calendar years 2008 and 2009 as evidence that Defendant Silverkey paid the debt.  These records show that Defendant Silverkey made regular payments in 2008 and 2009; however, the records also clearly show that the payments were for interest.[77]  Not only is there no documentation of the payment of principal, but Defendants' math does not take into account the accrual and payment of interest over the course of about four years or account for the parties' agreement that the debt stood at $527,572.11 in July 2010, as stated in the second extension agreement.

Defendants' contract defenses and counterclaim do not survive summary judgment.

### 2.  Fraud Defense and Counterclaim

Defendants listed, as a defense, fraud by nondisclosure. Although not explained in their amended answer, the defense presumably is based on the Bank's alleged failure to reveal its financial troubles and alleged inability to fund the loan at the inception of the loan and subsequently, as raised in the counterclaim.  The fraud counterclaim is also based on the Bank's alleged misrepresentation regarding the intent to fund the loan in the future and its misrepresentation regarding the intent not to foreclose.  The nondisclosure issue is addressed before the misrepresentation-of-intent issue.

---

[77]   See Doc. 3-19 through 3-22, Exs. N & O to David Felt's Aff. in Support of Defs.' St. Ct. Resp. to the Bank's Mot. for Summ. J., Payment Records.

> A fraud claim must be supported by proof that:
>
> (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

Exxon Corp. v. Emerald Oil & Gas Co., L.C., 348 S.W.3d 194, 217 (Tex. 2011)(citing prior Supreme Court of Texas cases).  A failure to disclose information will not satisfy the "material misrepresentation" element unless there was a duty to disclose the omitted information.  Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001)(citing Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998)).  The court decides, as a matter of law, whether a duty to disclose exists.  Id.  A duty to disclose may arise in the context of a fiduciary relationship.  See Sw. Energy Prod. Co. v. Berry-Helfand, 411 S.W.3d 581, 594 (Tex. App.—Tyler 2013, pet. granted)(citing Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied)).

An example of a formal fiduciary relationship is between an attorney and a client.  Meyer v. Cathey, 167 S.W.3d 327, 330 (Tex. 2005)(citing Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 199 (Tex. 2002), et al.).  An informal fiduciary duty may arise from "a moral, social, domestic or purely personal relationship of trust and confidence."  Id. (quoting Associated Indem. Corp. v. CAT

Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998)).  Between contracting parties, an informal fiduciary duty is not imposed lightly.  Id. (quoting Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997)).  The rare occasion when such a duty is imposed is when "the special relationship of trust and confidence [existed] prior to, and apart from, the agreement made the basis of the suit." Associated Indem. Corp., 964 S.W.2d at 288 (citing Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269, 280 (Tex. 1995)).

In 2005, the Supreme Court of Texas explored whether a fiduciary relationship existed between business associates.  See Meyer, 167 S.W.3d at 329, 331.  The court found that, although the two had worked on prior projects together, those projects were arms-length transactions that were mutually beneficial.  Id. at 331.  Neither the trust of one of the associates in the other nor their four-year friendship transformed their business association into a fiduciary relationship.  See id.

Here, a home-building company entered into an acquisition and construction loan with a bank, an arm's-length business transaction.  Defendants suggest that the relationship was made special by the long-standing lending relationship they had with the Bank and one or more of its loan officers.  As in the Meyer case, that is just not enough to infer a special relationship of trust and confidence that warrants imposing a duty on the Bank to

20

disclose its financial condition.[78]

The other fraud claim is based on misrepresentations of intent. Under Title 12 of the United States Code, Congress protects the interests of the FDIC:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement--
>
> **(A)** is in writing,
>
> **(B)** was executed by the depository institution and any person claiming as adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> **(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> **(D)** has been continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). "[A]ny agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC]." 12 U.S.C. 1821(d)(9)(A).

The statute codifies the federal policy, recognized by the

---

[78]   Among the claims released and waived in the second extension agreement was breach of fiduciary duty. In <u>Meyer</u>, the parties' prior agreements "expressly disavowed the creation of any fiduciary duties or other special relationships." <u>Meyer</u>, 167 S.W.3d at 331. Although not as explicit in the second extension agreement here as in the agreements in <u>Meyer</u>, the waiver of any claim for breach of fiduciary duty mitigates against a finding of a fiduciary duty that would impose a duty of disclosure on the Bank.

U.S. Supreme Court in 1942, to protect the FDIC from misrepresentations made to induce or influence the FDIC's actions. D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp., 315 U.S. 447, 459 (1942). The D'Oench, Duhme & Co. case addressed a defense of failure of consideration based on an undisclosed agreement that the bank would not seek payment on the note. See id. at 454. The Court disallowed the defense against the FDIC's suit because the secret agreement would tend to deceive the banking authority. See id. at 459.

In 1987, the U.S. Supreme Court stated two purposes of 12 U.S.C. § 1823(e) ("Section 1823"): (1) "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets;" and (2) to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." Langley v. Fed. Deposit Ins. Corp., 484 U.S. 86, 91 (1987). The Langley case addressed a defense of fraud in the inducement based on the borrowers' alleged reliance on misrepresentations by the lending bank when they purchased real property and procured the loan. See id. at 88-89. The Court disallowed the defense against the FDIC upon substitution for the failed bank because the word "agreement" in Section 1823(e) encompasses both express promises to perform and "condition[s] to payment of a note, including the truth of an

express warranty." <u>Id.</u> at 91–93, 96.  Therefore, the requirements of the statute must be met for the defense to be viable against the FDIC.  See <u>id.</u> at 96.

Here, Defendants rely on two alleged misrepresentations by the Bank concerning its future intent: that it would fund the loan in the future in order to induce Defendants to sign additional documents and that it would not foreclose.  The first of these was in the form of an express warranty, which is encompassed in the word "agreement" in Section 1823(e), as explained in <u>Langley</u>.  The second, a promise not to foreclose, was an unrecorded agreement such as the one in <u>D'Oench, Duhme & Co.</u>  Thus, both fraud claims are subject to the terms of Section 1823(e).  Because neither was in writing, neither can form the basis of, or substantially comprise, a claim against the FDIC.

Defendants' fraud defense and counterclaim do not survive summary judgment.

### 3.  Statutory Deficiency Protections and Economic Duress

Defendants also included in their answer the defenses of offset for the fair market value pursuant to Texas statutory deficiency protections and economic duress.  As with the other defenses, no elaboration was provided.  No elaboration is needed on these defenses because offset and claims based on undue influence, duress, and/or economic coercion were released and waived in the second extension agreement.  Defendants make no argument to the

23

contrary.

Defendants' offset and economic-duress claims do not survive summary judgment.

### 4. Estoppel

Defendants' answer and counterclaim do not elaborate on the defense of estoppel. The only fathomable theories based on Defendants' allegations are that the Bank was estopped from instituting a foreclosure sale because of the Bank's breach of contract or its misrepresentations and that the Bank was estopped from seeking a deficiency judgment because of the statutory protections. These are not viable theories in light of the court's conclusions about the allegations of breach of contract and fraud and the applicability of the statutory deficiency protections to the facts of this case.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that the motion be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>8th</u>  day of January, 2016.


_____
U.S. MAGISTRATE JUDGE